UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| HARRY FUNG,<br><br>    Plaintiff,<br><br>v.<br><br>NEVADA PROPERTY 1, LLC, d/b/a<br>COSMOPOLITAN OF LAS VEGAS,<br><br>    Defendant. | Case No. 2:12-cv-01946-APG-CWH<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Dkt. No. 18) |

I. **BACKGROUND**

The parties are aware of the factual and procedural background of this case. In brief, Harry Fung was employed at the Cosmopolitan of Las Vegas (the "Cosmopolitan") from December 2010 to January 2012. He was initially hired as a dealer, and shortly thereafter he was promoted to the position of pit supervisor. On December 10, 2010, the Cosmopolitan suffered a theft of $20,000 in $1,000 chips from a roulette table in Fung's pit area.[1] At the precise moment of the theft, 10:00 p.m., Fung's back was turned on his pit area and he was speaking with a casino host at the "podium"—a furnishing in the center of a grouping of gaming tables that serves as a storage space, tabletop, and computer terminal. The parties dispute whether Fung's interaction with the host was part of his job duties or idle conversation, but that issue is irrelevant for purposes of this Order.

Fung noticed the missing $20,000 at about 10:30 p.m., at which time he notified his superiors. Fung did not physically verify the amount of chips on each of his tables when his shift started earlier that evening; he alleges he trusted the prior shift supervisor's assertion that the chip counts were accurate. It is unclear whether his lack of physical verification had any bearing on the theft or whether he would have discovered the theft any sooner had he properly verified the

---

[1] Fung was responsible for a pit area containing two blackjack tables and two roulette tables.

1  chip counts. After an investigation and review of the surveillance footage, Fung's supervisors
2  learned that a two-man team had distracted the roulette dealer when Fung's back was turned.
3  Fung initially denied that a theft had occurred, and blamed the dealer for any loss that may have
4  occurred. Fung was suspended on December 11, 2010. Fung claims he was the target of
5  discrimination because he is Asian and of Chinese and Korean origin.

6  On January 18, 2012, John Zaremba, the Cosmopolitan's Vice President of Gaming
7  Operations, terminated Fung's employment. In relevant part, the reasons cited were (i) failure to
8  maintain the integrity of table games; (ii) lack of knowledge of chips on his tables; (iii) failure to
9  remain attentive of his area; (iv) hostility toward instructions from superiors; and (v) the refusal to
10 acknowledge any responsibility for his actions.

11 In May 2012, Fung filed a charge of discrimination with the Nevada Equal Rights
12 Commission ("NERC").[2] In October 2012, NERC issued a report finding no evidence of
13 discrimination on the basis of race or national origin.[3]

14 In November 2012, Fung filed suit under Title VII of the Civil Rights Act of 1964, as
15 amended in 1991, 42 U.S.C. § 2000e *et seq.*, and the Nevada state corollary, NRS § 613.330 *et*
16 *seq.* The crux of his claims is that the other persons involved in the theft—the roulette dealer,
17 another pit supervisor in an adjacent pit area, and Fung's supervisors, none of whom is Asian—
18 were not disciplined as Fung was, and that there were several prior, similar incidents of theft at
19 the Cosmopolitan for which similarly situated, non-Asian supervisors were neither suspended nor
20 fired. Presently before the Court is the Cosmopolitan's motion for summary judgment.[4]

21 ////
22 ////
23 ////
24 ////

---

[2] (Def.'s Ex. 29, Dkt. No. 18-3 at 51.)
[3] (Def.'s Ex. 30, Dkt. No. 18-3 at 55–56.)
[4] (Dkt. No. 18.)

## II. ANALYSIS

### A. Legal Standard — Summary Judgment, Fed. R. Civ. P. 56

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Material facts are those that may affect the outcome of the case.[6] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[7] "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor."[8] A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."[9]

In determining summary judgment, courts apply a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."[10] In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the

---

[5] Fed. R. Civ. P. 56(a).

[6] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7] *See id.*

[8] *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[10] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

burden of proof at trial.[11] If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists.[13] To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[14] In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data.[15] Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial.[16]

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.[17] The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor."[18] But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted.[19]

**B.     Legal Standard — Title VII, Disparate Treatment[20]**

Title VII prohibits discrimination against an employee or an applicant for employment on the basis of race, color, religion, sex, or national origin.[21] To prevail on a Title VII discrimination

---

[11] *See Celotex*, 477 U.S. at 323–24.

[13] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[14] *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

[15] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[16] *See Celotex*, 477 U.S. at 324.

[17] *See Anderson*, 477 U.S. at 249.

[18] *Id.* at 255.

[19] *See id.* at 249–50.

[20] The Nevada statutory claim under NRS § 613.330 *et seq.* is subject to the same burden-shifting test as the Title VII claim. The results of the Title VII analysis thus apply in full force to the Nevada statutory claim. *See Smith v. Gardiner*, 362 F. App'x 822, 823 (9th Cir. 2010) (unpublished); *Hirschhorn v. Sizzler Rests. Int'l, Inc.*, 913 F. Supp. 1393, 1398 (D. Nev. 1995); *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005).

claim for disparate treatment, a plaintiff must establish a prima facie case by presenting evidence that "gives rise to an inference of unlawful discrimination."[22] A plaintiff can establish a prima facie case through direct evidence or through circumstantial evidence via the burden shifting framework set forth in *McDonnell Douglas*.[23]

Under *McDonnell Douglas*, the plaintiff carries the initial burden of establishing a prima facie case.[24] To do so, the plaintiff must show that (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.[25] "Alternatively, the plaintiff may establish his prima facie case by 'offering evidence adequate to create an inference that an employment decision was based on a discriminatory criteria [sic] under [Title VII].'"[26] "The burden of establishing a prima facie case of disparate treatment is not onerous."[27] "At summary judgment, the degree of proof necessary to establish a prima facie case is minimal and does not even need to rise to the level of a preponderance of the evidence."[28]

"If established, the prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff. . . . The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action."[29] "If the employer

---

[21] *See* 42 U.S.C. § 2000e–2(a).

[22] *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[23] *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007).

[24] *McDonnell Douglas*, 411 U.S. at 802.

[25] *Hawn v. Executive Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).

[26] *Mitchell v. Office of Los Angeles Cnty. Superintendent of Sch.*, 805 F.2d 844, 846 (9th Cir. 1986) (misquoting *Teamsters v. U.S.*, 431 U.S. 324, 358 (1977) (fn. omitted)).

[27] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

[28] *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005) (internal quotation marks and citation omitted).

[29] *Id.*

meets this burden, the presumption of unlawful discrimination 'simply drops out of the picture,'" and the plaintiff must then prove that the defendant's proffered reasons for the termination are mere pretext for unlawful discrimination.[30]

Fung has failed to sufficiently establish a prima facie case because he has not submitted any admissible evidence of similarly situated, non-Asian employees who were treated more favorably. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct."[31] Fung was not similarly situated in job or conduct to the roulette dealer. Although both he and the dealer have the broad duty of caretaking and protecting the Cosmopolitan's property, Fung was in a supervisory role with much greater responsibility. A significant, if not the primary, aspect of his job was to oversee gaming at four tables. A dealer is only responsible for one table, and must address ongoing bets and payouts that occur quite quickly. Likewise, Fung was not similarly situated to his superiors—Donald Clellan, Jackie Burke, and Jimmy Russo—because they held management positions above Fung. They did not have the same on-the-spot responsibility to oversee table gaming as Fung did. The other pit supervisor who Fung mentions, Gilberto Hernandez,[32] was not in charge of Fung's pit area. Even if Hernandez was in the vicinity and facing the roulette table during the theft, there is no admissible evidence that Hernandez actually saw the theft. Therefore it is irrelevant whether Hernandez was disciplined.

In his declaration, Fung describes several incidents in which non-Asian pit supervisors were not disciplined in circumstances similar to Fung's (the "Katrina Chu" and the "High Limit Room" incidents).[33] Fung testified in deposition, however, that he has no personal knowledge of those incidents.[34] As declarations not based on personal knowledge are inadmissible at summary judgment,[35] and inadmissible evidence cannot be considered on summary judgment,[36] I must

---

[30] *Id.* (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993)).

[31] *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003).

[32] (*See* Fung Decl. ¶ 4, Dkt. No. 20 at 10.)

[33] (*See id.* ¶¶ 5–6.)

[34] (Fung Depo. 211:1–19, 241:17–20.)

[35] *See Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007).

disregard the alleged favorable treatment received by these non-Asian pit supervisors. Consequently, Fung fails to meet the "similarly situated" requirement for a prima facie case.

Because Fung fails to establish a prima facie case, there is no need to examine whether the Cosmopolitan had legitimate, non-discriminatory reasons to fire Fung or whether those reasons were mere pretext for unlawful discrimination. This result applies equally to Fung's federal and state law claims for discrimination.

### III.  CONCLUSION

For the reasons set forth above, the Cosmopolitan's motion for summary judgment (Dkt. No. 13) is GRANTED.

DATED this 11th day of July, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[36] *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).